1

2  Amy Wilkins Hoffman (SBN 022762)
   Hoffman Legal, LLC
3  4742 N. 24th St. #300
   Phoenix, AZ  85016
4  623-565-8851
   ahoffman@hoffmanlegalaz.com

5

6  John V. Golaszewski*
   Joseph N. Casas*
7  The Casas Law Firm, PC
   1740 Broadway, 15th fl.
8  New York, NY 10019
   Tel: 855-220-9626
9  john@talentrights.law
   joseph@talentrights.law

10

11 *pro hac vice application forthcoming

12 Attorneys for Plaintiffs

13            **IN THE UNITED STATES DISTRICT COURT**
               **FOR THE DISTRICT OF ARIZONA**

14

15 | Cielo Jean "CJ" Gibson, a California | Case No. _____ |
   | resident; Ursula Mayes, a California | |
   | resident; Monica Leigh Burkhardt, a New | |
   | York resident; Jessica "Jessa" Hinton, a | |
   | California resident; Alana Marie Souza | **COMPLAINT** |
   | a/k/a Alana Campos, a California resident, | |
   | | (Jury Trial Demanded) |
   | Plaintiffs, | |
   | | |
   | - against - | |
   | | |
   | Thomas 4420, LLC, d/b/a Sugar 44 | |
   | Cabaret, an Arizona limited liability | |
   | company, | |
   | | |
   | Defendant. | |

Plaintiffs Cielo Jean "CJ" Gibson, Ursula Mayes, Monica Leigh Burkhardt, Jessica "Jessa" Hinton, Alana Marie Souza a/k/a Alana Campos ("Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against Defendant Thomas 4420, LLC d/b/a Sugar 44 Cabaret ("Defendant," "Sugar," or the "Club"), respectfully alleges as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendant's misappropriation and unauthorized publication of images of Plaintiffs, who are world-renowned professional models, in order to promote its strip club, Thomas 4420, LLC d/b/a Sugar 44 Cabaret.

2. As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos, and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of publicity under Arizona law; c) violation of Arizona's unfair competition law, which prohibits unlawful, unfair and fraudulent business acts or practices, as well as deceptive advertising; d) negligence and respondent superior; and e) various common law torts, including defamation and conversion.

3. In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs seek an Order from this Court permanently enjoining Defendant from using her Image to promote any club, via any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B).

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

6.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States and abroad.

7.      According to publicly available records, Defendant Thomas 4420, LLC is a limited liability company organized and existing pursuant to the laws of the State of Arizona. Defendant Thomas 4420, LLC operates Sugar 44 Cabaret at 4516 N 19th Ave, Phoenix, AZ 85015.

8.      Venue is proper in the United States District Court for the District of Arizona because Phoenix, Arizona is the principal place of business for Defendant.

9.      All parties have minimum contacts with Maricopa County, a significant portion of the alleged causes of action arose and accrued in Maricopa County, Arizona, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Maricopa County.

## **PARTIES**

10.      Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is professional model and resident of Los Angeles County, California

11.      Plaintiff Ursula Mayes ("Mayes") is a professional model and resident of Orange County, California.

12.      Plaintiff Monica Leigh Burkhardt ("Burkhardt") is a professional model and a resident of Suffolk County, New York.

13.      Plaintiff Jessica "Jessa" Hinton ("Hinton") is a professional model and resident of

Los Angeles County, California.

14.    Plaintiff Alana Marie Souza a/k/a Alana Campos ("Campos") is a professional model and resident of Los Angeles County, California.

15.    According to publicly available records, Thomas 4420, LLC is a limited liability company formed under the laws of the State of Arizona. During times relevant to this action, Thomas 4420, LLC operated Sugar 44 Cabaret at 4420 E. Thomas Road, Phoenix, Arizona 85018.

## FACTUAL ALLEGATIONS

16.    As set forth immediately below, Plaintiffs are well-known professional models who earn their livelihood modeling and licensing their Images to companies, magazines, and individuals for the purpose of advertising, endorsing, or promoting products and services.

17.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they choose to model.

18.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Sugar.

19.    In the case of every Plaintiff, such appearance was false.

20.    Moreover, in each and every case, this misappropriation occurred without any Plaintiffs' knowledge, consent, or authorization and at no point did Plaintiffs ever receive any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper

and illegal use of Plaintiffs' Images has caused Plaintiffs to suffer substantial damages.

21.     Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images it misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

22.     By using the Plaintiffs' image and likeness, Defendant did not use its own advertising idea, and instead used the Plaintiffs' (or their licensees') advertising ideas to promote their club to the public.

***Plaintiffs' Backgrounds and Careers***

23.     Cielo Jean "CJ" Gibson is an American model who enjoys great success in her industry. Gibson was the Import Tuner magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including *FHM*, *American Curves*, *Supreme*, *MuscleMag International*, *Muscle & Fitness*, and *Teeze*, Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc., in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

24.     Upon information and belief, Gibson is depicted in the photo in Exhibit "A" to promote Sugar on its Facebook page.  This advertisement remains posted as of the date of this Complaint. This Image was intentionally altered to make it appear that Gibson was either a

stripper or entertainer working at Sugar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

25.    Gibson has never been employed at Sugar, has never been hired to endorse Sugar, has never been otherwise associated or affiliated with Sugar, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

26.    Ursula Mayes is a model whose career started when her photos won first place in prestigious photography awards and a spread in *Maxim* magazine. She is well known as a "suitcase model #5" from the hit game show "Deal or No Deal." Mayes has appeared on "Minute To Win It," "The Tonight Show," and "The Jay Leno Show." She has also appeared in campaigns for Coronet Diamonds, Volkswagen, Subaru, Bacardi, Vogue, *Elle*, *In Style*, *Cosmopolitan*, and *Marie Claire*, to name a few. Mayes is currently a cover model and a star of the game *Juiced 2: Hot Import Nights*. She has a modeling contract under CESD Talent Agency (Los Angeles, California) as well as Brand Model & Talent Agency (Orange County, California), and as an actress with Abstract Talent Agency.

27.    Upon information and belief, Mayes is depicted in the photos in Exhibit "B" to promote Sugar on its Facebook page.  These advertisements remain posted as of the date of this Complaint. These Images were intentionally altered to make it appear that Mayes was either a stripper or an entertainer working at Sugar, and that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

28.    Mayes has never been employed at Sugar, has never been hired to endorse Sugar, has never been otherwise associated or affiliated with Sugar, has received no remuneration for

Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.     Monica Leigh Burkhardt worked as a bartender and dental assistant prior to being encouraged by her childhood friend and fellow *Playboy* Playmate, Courtney Culkin, to try out. She has modeled for the famous men's magazine in various newsstand special editions and was featured on the cover of "Playboy's College Girls" in September 2005. She was the *Playboy* Cyber Girl of the Week for August 29, 2005 and the Cyber Girl of the Month for December, 2005. Leigh was subsequently named Cyber Girl of the Year for 2006. Moreover, she was the Playmate of the Month in the March, 2006 issue of *Playboy* and graced the cover of the August, 2006 issue. Leigh has appeared in several *Playboy* videos and on a handful of episodes of the reality TV series, "The Girls Next Door" (2005). She has acting roles in the movies, *The Duel* (2006), *The Pool Boys* (2009), *The Gentleman* (2007) and *Road Raiders* (2000). Monica has been an extra not only in *Spider-Man* 3 (2007), but also on episodes of both *Entourage* (2004) and *CSI: Miami* (2002).

30.     Upon information and belief, Burkhardt is depicted in the image in Exhibit "B" to promote Sugar on its Facebook page. These advertisements remain posted as of the date of this Complaint. This Image was intentionally altered to make it appear that Burkhardt was either a stripper or entertainer working at Sugar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

31.     Burkhardt has never been employed at Sugar, has never been hired to endorse Sugar, has never been otherwise associated or affiliated with Sugar, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.     Jessica Hinton a/k/a Jessa Hinton was discovered by a talent manager at a wedding at 14. By 16 she locked in three national TV commercials and made guest appearances on *Baywatch* and *7th Heaven*. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV personality roles hosting for *Victory Poker* and *Top Rank Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Hinton also attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a program on Los Angeles television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. She was named Creative Director for MAJR Media and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 4.2 million followers on Facebook, Instagram and Twitter.

33.     Upon information and belief, Hinton was depicted in the image in Exhibit "C" to promote Sugar on Facebook page. These advertisements remain posted as of the date of this Complaint. This Image was intentionally altered to make it appear that Hinton was either a stripper or entertainer working at Sugar, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

34.    Hinton has never been employed at Sugar, has never been hired to endorse Sugar, has never been otherwise associated or affiliated with Sugar, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.    Alana Marie Souza a/k/a Alana Campos is a Brazilian model who started working at the age of 15. Campos was scouted by the director of Ford Models, which remained her agency for five years. While she was nominated in numerous beauty pageants in her country, she decided to move to the United States at 20 and is currently represented by Wilhelmina Models. Campos has been published in *Playboy*, *Astonish*, *Viva Glam*, and *Bliss* magazines. She has also been in many campaigns such as Arden B, Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, Sports Calendar, and appeared as a spokes model for My Body Journey and as a cover girl for Arizona Foothills Magazine. In addition, Campos was featured in the movie *Last Vegas* with Robert DeNiro, Morgan Freeman, and Michael Douglas.

36.    Upon information and belief, Campos is depicted in the photo in Exhibit "C" which was used to promote Sugar on its Facebook page.  These advertisements remain posted as of the date of this Complaint. This Image was intentionally altered to make it appear that Campos was either a stripper or entertainer working at Sugar, and that she endorsed the Club,, or that she was otherwise associated or affiliated with the Club.

37.    Campos has never been employed at Sugar, has never been hired to endorse Sugar, has never been otherwise associated or affiliated with Sugar, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages

as a result of same.

***Defendant's Business***

38.    Upon information and belief, Thomas 4420, LLC, operates a strip club under the name Sugar 44 Cabaret where they are engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

39.    Upon information and belief, and in furtherance of its promotion of Sugar, Defendant owns, operates and controls Sugar's social media accounts, including its Facebook, Twitter, and Instagram accounts.

40.    Defendants used Sugar's Facebook, Twitter, and Instagram accounts to promote Sugar, and to attract patrons thereto.

41.    Defendant did this for its own commercial and financial benefit.

42.    Defendant used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as employees at Sugar 44 Cabaret, that she promoted the Club, or that she was otherwise associated or affiliated with the Club.

43.    Defendant used Plaintiffs' Images and created the false impression that Plaintiffs worked at or endorsed Sugar in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

44.    As Defendant was at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Sugar, and at no point have any of the Plaintiffs

ever endorsed Sugar or have otherwise been affiliated or associated with Sugar.

45.    All of Defendant's activities, including its misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendant did not compensate Plaintiffs for its use of their Images.

46.    As such, Plaintiffs have never received any benefit from Defendant's use of their Images.

***Standard Business Practices in the Modeling Industry***

47.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

48.    The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location of where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (e.g., company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are one-, two-, or three-year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

49.    As detailed above, Defendant knowingly, and without the prior consent of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Sugar, by and through various marketing and promotional mediums including, without limitation, Sugar's use of internet posts, social media (Facebook, Twitter, Instagram, etc.) posts,

and the creation and distribution of collateral materials such as flyers, posters, and cards.

50.    Defendant showcased Plaintiffs' Images on Sugar's materials, including posts on social media pages, in order to create the false impression that the Plaintiffs worked at Sugar, or endorsed, promoted, or sponsored same, or were otherwise associated or affiliated the club.

51.    Defendant did so in order to attract clientele to Sugar, promote Sugar, and thereby generate revenue for Defendant.

52.    Defendant was aware that, by using Plaintiffs' Images, it was violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Sugar.

53.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

54.    In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

55.    This is especially so insofar as each of Plaintiffs' Images have been associated with a night club, and the implication of Defendant's use of Plaintiffs' Images is that they are employees or entertainers, endorse a strip club, or are otherwise associated or affiliated with a strip club.

56.    At no point were any of the Plaintiffs' ever affiliated with Sugar or Defendant.

57.    Each of Plaintiffs' Images were used without their consent.

58.    At no point were Plaintiffs' ever contacted by Defendant, or any representative of the Defendant, to request the use of Plaintiffs' Images.

59.    No Defendant ever obtained, either directly or indirectly, permission to use any of

Plaintiffs' Images.

60.    No Defendant ever paid any Plaintiff for its use of their Images on any promotional materials, including Sugar billboards, social media, website, or other promotional materials.

61.    By using the Plaintiffs' image and likeness, Defendants did not use their own advertising idea, and instead used the Plaintiffs' (or their licensees') advertising ideas to promote their club to the public.

62.    Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive the Plaintiffs of their right to determine the use their Images.

63.    Upon information and belief, Defendant has taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.:**
**False Endorsement)**

64.     Plaintiffs hereby repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

65.    The provisions of the Lanham Act, 15 U.S.C. §1125, et seq. apply to Defendant and protect Plaintiffs from the conduct described herein.

66.    Defendant used Plaintiffs' Images, inter alia, in order to create the false impression with the public that Plaintiffs either worked at Sugar 44 Cabaret as employees or endorsed the business.

67.    This was done to promote and attract clientele to Sugar 44 Cabaret, and thereby

generate revenue for the Defendant.

68.    Thus, this was done in furtherance of Defendant's commercial benefit.

69.    Even though Defendant was at all times aware that the Plaintiffs neither worked at, nor endorsed, Sugar 44 Cabaret, Defendant nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Sugar 44 Cabaret.

70.    Defendant knew that its use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Sugar 44 Cabaret.

71.    Upon information and belief, Defendant's use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Sugar 44 Cabaret, and the goods and services provided by Sugar 44 Cabaret.

72.    Due to Defendant's unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial, but in all events, not less than seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Common Law Right of Publicity)

73.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

74.    As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in her image, photo, persona and likeness.

75.    Said commercial interest was developed by each Plaintiff through her investment of

time, effort and money in her career, image, persona and likeness.

76.     As set forth herein, Defendant used each Plaintiff's image and likeness for commercial purposes by using same in Sugar's advertising.

77.     Defendant did so without any Plaintiff's consent, written or otherwise.

78.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

79.     Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

80.     Defendant was at all relevant times aware that it never received any Plaintiff's permission or consent to use her Images on any website or social media account, or on any other medium, in order to promote the Club.

81.     At no point did Defendant ever compensate Plaintiffs for its use of their Images

82.     No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

83.     In addition, because Defendant's actions in misappropriating Plaintiffs' Images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Unfair or Deceptive Trade Practices, A.R.S. Title 44, Chapter 9, *et seq.*)**

84.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

85.    Defendant operated the Club website and social media accounts in order to promote the Club, to attract clientele thereto, and to thereby generate revenue for Defendant.

86.    As such, Defendant's operation of the website and social media accounts, and its publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Arizona.

87.    Defendant published Plaintiffs' Images on the Club website and social media accounts in order to create the false impression that Plaintiffs were either employees working at the Club, endorsed the Club, or were otherwise affiliated, associated, or connected with the Club.

88.    As such, Defendant's intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

89.    Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Arizona law.

90.    Defendant's advertising practices offends the public policy of Arizona insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendant's commercial benefit.

91.    Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as Defendant has sought to confuse the public for its own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with the Club.

92.     Defendant's advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are employees or entertainers at, endorse, or are otherwise affiliated with, the Club.

93.     There are no benefits to Defendant's advertising practices as set forth herein except a benefit to Defendant's own commercial interests.

94.     As a result of Defendant's unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, Plaintiffs were harmed.

95.     As a result of Defendant's unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## FOURTH CAUSE OF ACTION
### (Common Law Unfair Competition)

96.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

97.     Defendant operated the Club website and social media accounts in order to promote the Club, to attract clientele thereto, and to thereby generate revenue for Defendant.

98.     As such, Defendant's operation of the website and social media accounts, and its publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Arizona.

99.     Defendant published Plaintiffs' Images on the Club website and social media accounts in order to create the false impression that Plaintiffs were either employees working at the Club, endorsed the Club, or were otherwise affiliated, associated, or connected with the Club.

100.    As such, Defendant's intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

101.    Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Arizona law.

102.    Defendant's advertising practices offends the public policy of Arizona insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendant commercial benefit.

103.    Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with the Club.

104.    Defendant's advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are employees or entertainers at, endorse, or are otherwise affiliated with, the Club.

105.    There are no benefits to Defendant's advertising practices as set forth herein except a benefit to Defendant's own commercial interests.

106.    As a result of Defendant's unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, Plaintiffs were harmed.

107.    As a result of Defendant's unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

**FIFTH CAUSE OF ACTION**
**(Defamation)**

108.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

109.    As detailed throughout this Complaint, Defendant published altered Images of Plaintiffs to promote Sugar to the general public and potential clientele.

110.    Defendant's publication of said Images constitutes a representation that Plaintiffs was either employed by the Defendant, that they endorsed Sugar, or that they had some affiliation with Sugar.

111.    None of these representations were true.

112.    In publishing Plaintiffs' altered Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs were employees working at Sugar or endorsed Sugar.

113.    Defendant was at least negligent in publishing Plaintiffs' Images because it knew, or should have known, that Plaintiffs were not employed by Sugar, had no affiliation with Sugar, had not consented to the use of their Images, and had not been compensated for the use of their Images.

114.    In the alternative, Defendant published the Images of Plaintiffs with actual malice because it knew that Plaintiffs' were not employed by Sugar, had no affiliation with Sugar, had not consented to the use of their Images, and had not been compensated for the use of their Images.

115.    Despite Defendant's knowledge and awareness of these facts, it nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for itself.

116.    Defendant's publication of Plaintiffs' Images constitutes defamation under Arizona law because said publication falsely accuses Plaintiff of having acted in a manner – i.e., working as a stripper and/or endorsing Sugar- which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

117.    Defendant's publication of Plaintiffs' Images likewise constitutes defamation per se under Arizona law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

118.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting Sugar, an inference which Defendant's publication of the Images support.

119.    Defendant's publication of Plaintiffs' Images likewise constitutes defamation per se under Arizona law because, insofar as said publication falsely portrays each of the Plaintiffs as an employee or entertainer, it imputes unchastity to her.

120.    Defendant's publication of Plaintiffs' Images caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### SIXTH CAUSE OF ACTION
**(Negligence and *Respondeat Superior*)**

121.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

122.    Plaintiffs are further informed and believe and hereon allege that Defendant maintained or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

123.    Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in its advertising practices.

124.    Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

125.    Defendant further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

126.    Defendant breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

127.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate it to employees, and/or supervise its employees in order to ensure that these policies, along with federal and Arizona law, were not violated.  Defendant breached its duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training

of its employees and agents.

128.   Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

129.   As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

130.   Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

131.   Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

132.   By the conduct detailed above, Defendant converted Plaintiffs' property rights in their Images for its own use and financial gain.

133.   As a result of Defendant's unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

134.   Plaintiffs hereby repeat and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

135.   As set forth in detail above, Defendant published Plaintiffs' Images in order to promote the Club to the general public and potential clientele.

136.   Defendant's publication was for the purpose of creating a false impression to the

general public that Plaintiffs were either employees or entertainers working at the Club or endorsed the Club.

137.    Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

138.    Upon information and belief, Defendant did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

139.    Defendant has been enriched by its unauthorized control over, and publication of, Plaintiffs' Images because said publication has assisted Defendant in attracting clientele to its Club.

140.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

141.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Quantum Meruit)

142.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

143.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

144.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

145.    Although Defendant has availed itself of the benefit of being associated with

Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendant has not compensated Plaintiffs.

146.    Plaintiff is therefore entitled to reasonable compensation for the Club's unauthorized use of their Images.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through ninth causes of action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote the Club;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: January 30, 2023

By: /s/ Amy Wilkins Hoffman
Amy Wilkins Hoffman (SBN 022762)
Hoffman Legal, LLC
4742 N. 24th St. #300

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Phoenix, AZ  85016
623-565-8851
ahoffman@hoffmanlegalaz.com

and

/s/John V. Golaszewski
The Casas Law Firm, PC
John V. Golaszewski*
Joseph N. Casas*
1740 Broadway, 15th fl.
New York, NY 10019
Tel: 855-220-9626
john@talentrights.law
joseph@talentrights.law

Attorneys for Plaintiffs


* Pro Hac Vice application forthcoming